_____

JEFFREY MICHAEL HOCHMUTH

            Plaintiff,     1:18-cv-00045-MAT

                         **DECISION AND ORDER**

              -v-

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

            Defendant.

_____

## INTRODUCTION

Jeffrey Michael Hockmuth ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On February 10, 2014, Plaintiff protectively filed an application for DIB, alleging disability as of December 6, 2013, due to spinal stenosis, cervical stenosis, clinical depression, fibromyalgia, plantar fasciitis, sleep apnea, high blood pressure,

chronic pain and chronic headaches, arthritis, and carpal tunnel syndrome. Administrative Transcript ("T.") 100-01. The claims were initially denied on April 9, 2014. T. 117-19. At Plaintiff's request, a hearing was conducted on June 8, 2016, in Buffalo, New York, by administrative law judge ("ALJ") Sharon Seeley, with Plaintiff appearing with his attorney. A vocational expert ("VE") also testified. T. 58-99. The ALJ issued an unfavorable decision on September 29, 2016. T. 8-33. Plaintiff appealed the decision to the Appeals Council ("AC"), which denied his request for review on November 24, 2017, making the ALJ's decision the final determination of the Commissioner. T. 1-6. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2019. T. 13.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 6, 2013, the alleged onset date. *Id.*

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: degenerative disc disease of the cervical spine, status post fusion; degenerative disc disease of the thoracic and lumbar spine; degenerative joint disease of the

bilateral knees; osteoarthritis; fibromyalgia; plantar fasciitis; obesity; obstructive sleep apnea; major depressive disorder; and generalized anxiety disorder. The ALJ also determined that Plaintiff's medically determinable impairments of hypertension and hyperlipidemia did not cause significant work-related functional limitations and thus were non-severe. *Id.*

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 14. The ALJ specifically considered Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine); 12.04 (Affective disorders); and 12.06 (Anxiety-related disorders). The ALJ also considered the effect of Plaintiff's obesity, as required by Social Security Ruling ("SSR") 02-1p. *Id*.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a), with the following limitations: can lift, carry, push and pull ten pounds occasionally and light items such as folders or small tools occasionally; can sit six hours in an eight-hour workday, alternating after thirty minutes to standing for five minutes; can stand and/or walk two hours in an eight-hour workday, alternating after thirty minutes to sitting for five minutes; can

-3-

occasionally balance or stoop; can never kneel, crouch, or crawl; can occasionally climb ramps or stairs but can never climb ladders, ropes or scaffolds; can occasionally reach overhead with the bilateral upper extremities; can frequently handle, finger and feel; can work in an environment with no exposure to hazards such as unprotected heights or moving machinery and no more than a moderate noise level such as that found in a department or grocery store or in light traffic; can understand, remember and carry out simple (1 or 2 step) instructions and tasks; can maintain attention and concentration sufficient for such tasks with customary work breaks; and can have occasional interaction with supervisors and coworkers, and incidental interaction with the general public. T. 16.

At step four, the ALJ concluded that Plaintiff is unable to perform any of his past relevant work as a bank branch manager, budget consultant, or retail store manager. T. 26.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of stuffer and envelope addresser. T. 27. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. *Id*.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted because the ALJ erred by not giving controlling weight to the opinions of the

following treating sources: the March 8, 2014, June 10, 2014, and April 30, 2016 opinions of Nicholas Aquino, M.D., Plaintiff's primary care physician; the April 7, 2014, August 10, 2015, and October 19, 2015 opinions of Eugene J. Gosy, M.D., Plaintiff's pain management specialist; the May 26, 2016 opinion of Cameron B. Hucknell, M.D., Plaintiff's orthopedist; the December 9, 2013 and May 3, 2016 opinions of Richard G. Bennett, M.D., Plaintiff's psychiatrist; and the August 18, 2015 and October 13, 2015 opinions of David E. Skiba, Ph.D., Plaintiff's psychologist. Docket No. 12-1 at 17-21. For the reasons discussed below, the Court finds Plaintiff's argument is without merit and affirms the Commissioner's final determination.

## I. <u>Treating Physician Opinions</u>

Under the Commissioner's regulations in place at the time the ALJ issued her decision in this case, a treating physician's opinion is entitled to controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not otherwise inconsistent with the substantial evidence of record. *See Green-Younger*, 335 F.3d at 106. An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

In evaluating a treating physician opinion, the ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as her "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32).

## II. Assessments Challenged by Plaintiff

### A. Dr. Aquino

Plaintiff first challenges the ALJ's assessment of opinions offered by Dr. Aquino on March 8, 2014, June 10, 2014, and April 30, 2016. Docket No. 21-1 at 17-18. On March 8, 2014, Dr. Aquino completed a Fibromyalgia Medical Assessment Form. T. 395-401. With respect to Plaintiff's functional limitations, Dr. Aquino opined that Plaintiff can walk one city block without rest or severe pain; sit and stand for twenty minutes at one time; sit and stand/walk for about two hours in an eight-hour workday; needs to shift positions every twenty minutes and walk for fifteen minutes;

needs a cane for occasional standing/walking; needs unscheduled breaks of twenty minutes in length, every thirty minutes, and would need to lie down and sit quietly during that time. T. 398-99. Dr. Aquino further opined that Plaintiff can occasionally lift ten pounds and never lift twenty or more pounds; can never stoop, crouch, crawl, or kneel, and can rarely bend, climb ladders, or climb stairs; can frequently look down, occasionally turn his head left or right and hold his head in a static position, and never look up. T. 399. Dr. Aquino opined that Plaintiff has significant limitations with reaching, handling, or fingering, and can use his hands to grasp, turn, and twist objects only fifty percent of the time; can use his fingers for fine manipulation only fifty percent of the time; and can never use his arms to reach overhead. T. 400. According to Dr. Aquino, Plaintiff experiences impaired social interaction, "fuzzy" thinking, and distractibility. *Id*. Finally, Dr. Aquino opined that Plaintiff's impairments interfere with his ability to complete an eight-hour workday twenty-five percent of the time; he cannot tolerate even "low stress" work; he has "good days" and "bad days"; and he would be absent from work more than four days per month. T. 397, 400.

Dr. Aquino issued another opinion on June 10, 2014. T. 590-91. That opinion is provided on a form entitled "Physical Ability Assessment," which Dr. Acquino partially completed. Dr. Aquino opined that Plaintiff should not engage in repetitive twisting,

turning, pushing, pulling, or bending; do no work with arms at shoulder level or above; not lift or carry anything heavier than ten pounds; and do no stooping, kneeling, crouching, or crawling. *Id.*

Dr. Aquino issued a third opinion on April 30, 2016. T. 637-42. Dr. Aquino opined that Plaintiff can occasionally lift and carry up to ten pounds, and never lift more than eleven pounds; sit, stand, and walk for twenty minutes at one time and sit, stand, and walk for one hour total in an eight-hour day; and requires a cane to ambulate. T. 637-38. Plaintiff could ambulate for only half of one block without the use of a cane. T. 638. Dr. Aquino further opined that Plaintiff can never use either of his hands for reaching over head, occasionally use the bilateral hands for all other reaching, handling, fingering, and feeling, and never use the bilateral hands to push or pull. T. 639. Dr. Aquino opined that Plaintiff can occasionally use his right and left foot for operation of foot controls; never climb ladders or scaffolds, stoop, kneel, crouch, or crawl; and can occasionally climb stairs and ramps, and balance. T. 639-40. Finally, Plaintiff can never be exposed to unprotected heights or moving mechanical parts, occasionally operate a motor vehicle, and occasionally be exposed to humidity and wetness, pulmonary irritants, extreme cold or heat, and vibrations. T. 641.

The ALJ gave "little weight" to the opinions of Dr. Aquino. T. 21. The ALJ explained that the specific limitations indicated by Dr. Aquino were unexplained, unsupported by treatment records, and contradictory. *Id*. The ALJ gave specific examples of these issues, including Dr. Aquino's inconsistent opinions on Plaintiff's ability to sit and stoop, as well as his ability to reach overhead, stoop, kneel, crouch, or crawl. *Id*. The ALJ also noted that Dr. Aquino appeared on at least some occasions to have filled out the form by checking all of the boxes in a given row that would result in a finding of disability. *Id*. Finally, the ALJ noted that Dr. Aquino opined in 2016 that all of Plaintiff's limitations have applied since 2006, but the record shows that Plaintiff worked until 2013. *Id*.

The Court has reviewed the above-mentioned opinions, Dr. Aquino's treatment notes, and the ALJ's written determination, and finds that the ALJ's assessment of Dr. Aquino's opinions is thorough and well-supported by the record. The Court first notes that the RFC adopts many of the limitations assessed by Dr. Aquino, including limitations for lifting and carrying, the ability to alternate positions every thirty minutes, limitations for kneeling, crouching, and crawling, and exposure to hazards. As to the portions of Dr. Aquino's opinions the ALJ rejected - which include his assessment of Plaintiff's ability to sit, stoop, and reach overhead -her consideration of the lack of support for and the

inconsistency among Dr. Aquino's opinions was proper, and are valid reasons for rejecting a treating physician opinion. *See Green-Younger*, 335 F.3d at 106. The Court also notes that all of Dr. Aquino's opinions are provided on form reports, further adding to the lack of support and inconsistency riddling those opinions. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 341 (W.D.N.Y. 2015) (opinions that are essentially "form reports composed of checklists and fill-in-the-blank statements," are "by their nature, of limited evidentiary value."), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).

Plaintiff contends that the ALJ was required to re-contact Dr. Aquino for clarification regarding any inconsistencies before rejecting his opinions; specifically, Plaintiff's ability to sit and stoop. Docket No. 12-1 at 19-20. However, "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician. Rather, because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent." *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012). Here, the ALJ was able to make a disability determination based on over 600 pages of medical transcripts already in the record, as well as

the multiple opinions issued by treating sources and consultative physicians. Under these circumstances, the ALJ was not required to re-contact Dr. Aquino.

**B.    Dr. Gosy**

Plaintiff next challenges the weight assessment given to Dr. Gosy's April 7, 2014, August 10, 2015, and October 19, 2015 opinions.  Docket No. 12-1 at 18.

On June 27, 2014, Lioudmila Pliss, MS, ANP, who works with Dr. Gosy, issued a letter opinion stating that Plaintiff perform no repetitive bending, lifting, or twisting; no operation of vibratory or mechanical equipment; no prolonged standing or sitting greater than 30 minutes at one time; no lifting of greater than 10 pounds, or five pounds in each hand; no repetitive work with the upper extremities; no work with the arms at shoulder level or above; and no climbing ladders or stairs. T. 600. ANP Pliss further stated that Plaintiff was limited to sedentary work, three-to-four hours per day. *Id*.

On August 10, 2015, Dr. Gosy completed a Physical Ability Assessment form, opining that Plaintiff can occasionally (approximately one-third of the day) sit, stand, walk, and reach overhead; can occasionally lift and carry ten pounds; and occasionally climb stairs and ladders. T. 596-97. Much of the form was left blank, including Plaintiff's ability to balance, stoop, kneel, crouch, and crawl, and his capacity for fine manipulations

and grasping. *Id*. Plaintiff had a temporary total disability, with a high level of permanency expected. T. 597.

On October 19, 2015, in a treatment note, Dr. Gosy again stated that Plaintiff had a temporary total disability, with a high level of permanency expected. T. 594.

The ALJ gave "little weight" to the opinion of ANP Pliss, which was made only a few months after the alleged onset date. T. 27. The Court additionally notes that any opinion offered by ANP Pliss is not entitled to controlling weight, as she is not an acceptable medical source. *See Taillon v. Commissioner*, No. 17-CV-6812, 2019 WL 1396837, at *3 (W.D.N.Y. Mar. 28, 2019) ("Examples of non-acceptable medical sources include nurse practitioners, licensed clinical social workers, and therapists."). The ALJ found that Dr. Gosy's August 10, 2015 statement regarding Plaintiff's functional capacity was "consistent with the medical evidence" and gave it "substantial weight," with the exception that Plaintiff could sit only occasionally, as that opinion was not consistent with the record. T.27.[1]

The Court has reviewed the opinions offered by Dr. Gosy and ANP Pliss, Plaintiff's treatment records from Dr. Gosy, and the

_____

[1]The ALJ also referenced an "incomplete" April 7, 2014 opinion offered by Dr. Gosy, citing to Exhibit 25, pages 15-16. The record contained at those pages of the transcript is a June 2, 2014 opinion offered by Michael C. Baase, D.C. *See* T. 607-08. The Court presumes that the ALJ was referencing the August 10, 2015 opinion offered by Dr. Gosy which, as the Court noted above, much of which was left incomplete.

-13-

written determination, and finds that the ALJ's assessment of those opinions was proper. The ALJ adopted many of the functional limitations assessed by Dr. Gosy and/or ANP Pliss, including their assessment of Plaintiff's limitations for lifting, carrying, and reaching overhead, the ability to alternate positions, and limitations for climbing stairs.

Plaintiff contends that the RFC for sitting is not supported by substantial evidence, and the ALJ improperly rejected opinion evidence offered by Drs. Gosy and Aquino regarding Plaintiff's ability to sit. Docket No. 12-1 at 21. As explained in the written determination, the opinion evidence offered by Drs. Gosy and Aquino regarding Plaintiff's ability to sit is unsupported and contradicted by the record, including evidence that Plaintiff's discomfort caused by sitting improved with the ability to switch positions, and improvement in Plaintiff's symptoms following his May 2015 surgery. T. 22; *see also* T. 18-19. In other words, the ALJ arrived at the RFC for sitting by referring to evidence in the record, including the opinion that Plaintiff can occasionally sit, and reduced it in accordance with contradictory evidence in the record. *Id*. *See Ecklund v. Commissioner*, 349 F. Supp. 3d 235, 247 (W.D.N.Y. 2018) ("The fact that the ALJ did not adopt a specific RFC proposed by any one medical opinion is of no consequence and is not required."). Further, the ALJ's assessment of Plaintiff's ability to sit is directly supported by the opinion of the state

agency consultant, M. Murphy, SDM, who opined that Plaintiff was able to sit for six hours in an eight-hour day. T. 108. Accordingly, the ALJ's assessment of the opinions offered by Dr. Gosy and ANP Pliss was proper.

### C. **Dr. Hucknell**

Plaintiff next challenges the May 26, 2016 opinion offered by Dr. Hucknell. Docket No. 12-1 at 18-19. In a treatment note dated May 26, 2016, Dr. Hucknell stated that Plaintiff was "disabled for work because of his chronic spinal pain and the fact that opiates do interfere with . . . cognition on a daily basis." T. 867. The ALJ explained that she did not give "great weight to Dr. Hucknell's opinion because he does not state any specific limitations and instead addresses only an issue reserved to the Commissioner." T. 23. As to Dr. Hucknell's statement regarding the effect of Plaintiff's opiate use, the ALJ explained that the "mental residual functional capacity adequately accommodates the effects of the claimant's use of pain medication by limiting the claimant to simple, low stress work." *Id*.

Contrary to what Plaintiff implies in his motion papers (*see* Docket No. 12-1 at 20), the ALJ did not disregard Dr. Hucknell's opinion. It is well-settled that "[t]he final question of disability is . . . expressly reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999). The Court has reviewed Dr. Hucknell's May 26, 2016 opinion on the ultimate issue

of disability, and notes that it does not contain any information relevant to Plaintiff's specific functional limitations, a fact the ALJ was entitled to consider when assessing his opinion. *AcKley v. Colvin*, No. 13-CV-6656T, 2015 WL 1915133, at *5 (W.D.N.Y. Apr. 27, 2015) (treating physicians' statements that the plaintiff was "completely disabled" were entitled to only little weight, where the physicians' statements failed to specify functional limitations, and were on matters reserved to the Commissioner); *Marquez v. Colvin*, No. 12 Civ. 6819(PKC), 2013 WL 5568718, at *14 (S.D.N.Y. Oct. 9, 2013) (ALJ properly gave treating physician's opinion "little weight" where it was "conclusory, did not state the claimant's functional limitations and is contradicted by other evidence in the record").

Nor was the ALJ required to re-contact Dr. Hucknell for further information, particularly considering the additional opinion and medical evidence in the record. *Ayers v. Astrue*, No. 08-CV-69A, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009) ("where, as here, the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification. Only if the ALJ cannot determine whether a claimant is disabled based upon existing evidence does the duty to recontact arise."). Accordingly, the

ALJ's consideration of Dr. Hucknell's May 26, 2016 statement was proper and supported by the record.

**D.** **Dr. Bennett**

Plaintiff next challenges the ALJ's assessment of opinions offered by Dr. Bennett on December 9, 2013, and May 3, 2016. Docket No. 12-1 at 19.

Plaintiff first contends that on December 9, 2013, Dr. Bennett recommended that Plaintiff take time off from work. *Id*. The Court notes that this statement is not a medical opinion, either on specific functional limitations or as to the ultimate issue of disability. Accordingly, it is not entitled to controlling weight.

On May 3, 2016, Dr. Bennett completed a "Mental Residual Functional Capacity Assessment." T. 662-63. Dr. Bennett indicated that Plaintiff has a moderate/severe limitation (activity not totally precluded, but substantially impaired in terms of speed or accuracy, can be engaged in no more than occasionally) in the following activities: understanding, remembering, and carrying out detailed (three or more step) instructions; completing a normal workday/week without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to unexpected changes in work setting and routine. *Id*. Dr. Bennett further opined that Plaintiff has moderate limitations for the following activities: understanding, remembering, and carrying out one-to-two step instructions;

remembering locations and work-like procedures; maintaining attention/concentration for two-hour segments; sustaining a routine without special supervision; working with others without being distracted; making work decisions; interacting appropriately with the public; and responding appropriately to changes, setting realistic goals and being aware of normal hazards. *Id.*

The ALJ gave Dr. Bennett's opinion "less weight" than the opinions offered by Dr. Skiba and Dr. Hoffman. T. 30. The ALJ explained that Dr. Bennett's opinion was not supported, and was inconsistent with the opinions offered by Drs. Skiba and Hoffman, and with Plaintiff's reported activities of daily living. *Id.* The ALJ also noted that Dr. Bennett's statement that Plaintiff's symptoms had existed since August 2010 rendered his decision unreliable, given that Plaintiff continued to work full-time as a bank manager until 2013. *Id.*

The Court has reviewed the opinion evidence offered by Dr. Bennett, Plaintiff's treatment records, and the written determination, and concludes that the ALJ's assessment of Dr. Bennett's opinion is proper and well-supported by the record. Dr. Bennett's opinion conflicts with the opinions offered by Drs. Hoffman and Skiba, who opined that Plaintiff is limited/moderately limited in performing complex/detailed tasks, interacting with the public, and responding appropriately to workplace problems and supervisors. T. 24. Dr. Bennett's opinion

also conflicts with his own treatment records which, as explained by the ALJ, show that Plaintiff had largely unremarkable mental status examinations. T. 20, 21. Dr. Bennett assessed Plaintiff with GAF scores between 70 and 75, indicating only mild symptoms. T. 20, 21, 25. Further, Plaintiff reported that he was able to perform activities of daily living, drive, and was bothered by groups of people, but was cordial. T. 16, 19. *See Feliciano v. Berryhill*, No. 6:16-cv-06311(MAT), 2017 WL 3537130, at *4 (W.D.N.Y. Aug. 17, 2017) (ALJ's decision not to give controlling weight to the plaintiff's treating physician was proper, where it conflicted with the plaintiff's reports of her daily activities; "[a]n ALJ is permitted to take into account conflicts between a claimant's testimony and a treating physician's opinion."). In other words, the record does not support the extensive, unsupported limitations assessed by Dr. Bennett, and the ALJ's assessment of his opinion was therefore proper.

### E.  Dr. Skiba

Plaintiff next challenges the ALJ's assessment of opinions offered by Dr. Skiba, on August 18, 2015, and October 13, 2015. Docket No. 12-1 at 19.

On August 18, 2015, on a form entitled "Behavioral Health Questionnaire," Dr. Skiba opined that Plaintiff could not return to work full-time, due to his physical condition. T. 23, 832-35. Dr. Skiba explained that Plaintiff's "ability to perform any work-

related tasks is dependent upon his physical status/conditions. However, his depressive condition may impair his ability to perform many tasks requiring interactions with the public or detailed duties." T. 834. On the same form, in response to questions that required a "yes" or "no" answer, Dr. Skiba opined that Plaintiff could not "perform the following Temperaments": directing, controlling, planning; performing repetitive work; influencing people; performing a variety of duties; expressing personal feelings; working alone or in isolation; performing under stress; attaining precise limits/tolerances; following specific instructions; dealing with people; and making judgments and decisions. T. 835.

On August 20, 2015, Dr. Skiba, in response to a questionnaire from the insurance company, stated that Plaintiff's "long term symptoms would seriously limit his ability to perform complex/detailed tasks; to effectively interact with the public; have difficulty handling work place problems, and/or respond productively to supervisory feedback or criticism." T. 828-29.

The ALJ gave "little weight" to Dr. Skiba's August 18, 2015 opinion that Plaintiff could not return to work due to his physical impairments because it was outside the scope of his expertise and treatment. T. 23. The ALJ also gave "little weight" to the check-box portion of the opinion relating to Plaintiff's performance of certain "temperaments," as the form allowed for only "yes" and "no"

answers, without any indication of the extent to which Plaintiff was limited in performing the various temperaments. *Id.* Finally, the ALJ noted that to the extent Dr. Skiba opined that Plaintiff could never perform any of the listed temperaments, including dealing with people, following specific instructions, and making judgments and decisions, his opinion was inconsistent with other evidence in the record. *Id.* The ALJ gave "greater weight" to Dr. Skiba's August 20, 2015 opinion – particularly his opinion that Plaintiff had significant limitations dealing with the public, handling problems, and performing complex or detailed work – as it was consistent with the whole record, including the treatment records of Drs. Skiba and Bennett. T. 24. The ALJ's adoption of these limitations is reflected in the RFC, which limits Plaintiff to simple, low-stress work, with limited interaction with others.

The Court has reviewed Dr. Skiba's opinions, Plaintiff's treatment records, and the written determination, and finds that the ALJ's assessment of Dr. Skiba's opinions was proper and well-supported by the record. The Court agrees that the August 18, 2015 opinion regarding Plaintiff's physical limitations is outside the scope of Dr. Skiba's expertise, and it was appropriate for the ALJ to consider this fact when assessing his opinion. *See Bailey v. Commissioner*, No. 14-cv-8454(JGK), 2016 WL 270453, at *5 (S.D.N.Y. Jan. 21, 2016) (ALJ properly noted that the plaintiff's treating physician was "working outside his area of expertise, rendering his

medical findings less persuasive."). The Court further notes that Dr. Skiba's August 18th opinion conflicts with other opinion evidence in the record regarding Plaintiff's physical limitations which, as explained above, does not preclude work. *See* Sections II(A-C), *supra*.

Plaintiff contends that "[t]he consistency between the opinions of Drs. Aquino, Cicchetti, Gosy, Hucknell and Bennett is enough to afford all of them controlling weight." Docket No. 12-1 at 19. There are several problems with this argument. First, Plaintiff does not identify any deficiency in the ALJ's assessment of opinion evidence offered by Dr. Cicchetti, and therefore the Court cannot discern which portion of his opinion Plaintiff believes was entitled to controlling weight. Second, the opinions offered by each of these doctors was not the same, as Drs. Aquino, Gosy, and Hucknell offered opinions on Plaintiff's physical functioning, and Dr. Bennett offered opinion evidence regarding Plaintiff's mental functioning. Third, the consistency of a treating physician's opinion with other opinion evidence in the record is only one factor the ALJ must consider when evaluating opinion evidence offered by a treating physician. *Burgess*, 537 F.3d at 129. As explained above, the ALJ offered several reasons for rejecting the opinions of these treating sources, including internal inconsistencies and inconsistencies with other medical evidence in the record.

Plaintiff contends that it was error for the ALJ to give more weight to a consultative examiner, rather than Plaintiff's treating physicians. *Id*. at 17, 21. The Court assumes that Plaintiff is referring to the ALJ's weighing of opinion evidence from Dr. Hoffman, the state agency consultant. The ALJ gave Dr. Hoffman's opinion "substantial weight," as it was consistent with other evidence in the record, including Plaintiff's treatment records, and the opinion evidence offered by Dr. Skiba. T. 24. However, "[p]roviding greater weight to the opinion of a consultative examiner, or non-examining State agency medical consultant, does not warrant automatic remand as Plaintiff appears to argue. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Gamble v. Commissioner*, No. 1:15-CV-0352(GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016), *adopted*, 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016). As noted above, the ALJ explained why she found that Dr. Hoffman's opinion was entitled to substantial weight, citing to specific examples in the record. T. 23-24 (discussing Dr. Hoffman's and Dr. Skiba's opinions). The ALJ's weighing of these opinions was proper under the circumstances. *See Donaldson v. Berryhill*, No. 2:17-cv-2000(ADS), 2018 WL 4845740, at *8 (E.D.N.Y. Oct. 4, 2018) ("If the consultative examiner's opinion is more

consistent with the medical evidence than a treating physician's opinion, the ALJ may accord the consultative examiner's opinion greater weight.").

Plaintiff appears to equate Dr. Hoffman's opinion that Plaintiff is "moderately limited" in completing a normal work day/week without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods (T. 110), with being off-task at a rate of twenty percent, which the vocational expert testified would preclude work (T. 92). *See* Docket No. 12-1 at 21-22. Plaintiff's argument that Dr. Hoffman's opinion would preclude employment is without merit, particularly because Dr. Hoffman did not provide a specific opinion on Plaintiff's time off-task. Indeed, Dr. Hoffman also opined that Plaintiff was not significantly limited in his ability to maintain attention and concentration for extended periods, and in his ability to perform activities within a schedule, maintain regular attendance, and be punctual. T. 110. Accordingly, Plaintiff's interpretation of Dr. Hoffman's opinion - *i.e.*, that his opinion supports that Plaintiff would be off-task twenty percent of the time - is not supported by the record.

Finally, Plaintiff contends that Drs. Hucknell, Gosy, and Bennett are specialists, and therefore their opinions are "entitled to great weight." Docket No. 12-1 at 20. This is a misstatement of the law. While the ALJ is required to consider a treating

physician's specialty along with other factors when evaluating their opinion, the ALJ is not required to give a specialist's opinion, on that basis alone, great weight. Rather, whether the opinion was issued by a specialist is only one part of the analysis. Here, the ALJ properly acknowledged the specialities of each of the these treating physicians. *See* T. 17 (acknowledging that Dr. Gosy is a pain management specialist), T. 18 (noting that Dr. Hucknell is an orthopedist), T. 20 (noting that Dr. Bennett is a psychiatrist). Accordingly, the Court is satisfied that the ALJ weighed the specialties of Drs. Hucknell, Gosy, and Bennett when evaluating their opinions.

In sum, it is clear from the written determination that the ALJ adequately considered Plaintiff's treatment relationship with his treating physicians (as evidenced by her thorough summary of Plaintiff's treatment history, *see* T. 17-25), their specialties, the extent to which their opinions are internally consistent, and whether the opinions are supported by the record as a whole. T. 21-25. The ALJ finds no error in the ALJ's assessment of the opinion evidence in the record. Remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is denied, and the Commissioner's motion for judgment on the pleadings (Docket No. 15) is granted.

Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    June 18, 2019
            Rochester, New York